Ygrí Rivera de Martínez, Juez Ponente
*804 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos la parte demandante mediante escrito de apelación presentado el 2 de julio de 1998. Solicita la revisión de una sentencia emitida el 18 de mayo de 1998 por el Tribunal de Primera Instancia, Sala Superior de Arecibo, mediante la cual dicho foro declaró con lugar una moción de sentencia sumaria presentada por la co demandada, Royal Insurance Co.
La adecuada comprensión del asunto ante nuestra consideración requiere que expongamos brevemente el trasfondo fáctico y procesal pertinente a la controversia ante nos, según surge del expediente.
I
El niño José Aníbal de Jesús y la niña Yadira García Rodríguez, ambos de un poco más de cuatro años, murieron ahogados luego de que el 1 de marzo de 1992 cayeran dentro de una piscina ubicada en el interior de la propiedad de Antonio Santana de Jesús, su esposa Lydia Maldonado y la sociedad legal de gananciales por ellos constituida.
El 10 de mayo de 1994, José A. de Jesús Torres y Evelyn Rodríguez De León por sí y en representación de su hijo José Rivera Rodríguez, y Patricia Rodríguez De León por sí y en representación de sus hijos Yanira y Patricia García Rodríguez, presentaron una demanda de daños y peijuicios. Alegaron, entre otras cosas, que los dueños de la propiedad, Antonio Santana de Jesús y su esposa, así como la sociedad legal de gananciales por ellos constituida, fueron responsables de lo acontecido, por tener el lugar abandonado y sin ningún tipo de supervisión, siendo la piscina visible desde el exterior, sin ninguna protección para evitar el acceso de menores. Plantearon que ello constituia un peligro atrayente. Alegaron, además, que lo ocurrido fue un suceso que era completamente previsible por los demandados.
Por los mismos hechos, el 26 de agosto de 1997, William García Rodríguez presentó una reclamación similar en contra de Royal Insurance, Co., aseguradora de la propiedad del Sr. Antonio Santana de Jesús. Posteriormente, ambos casos fueron consolidados. Luego de varios incidentes procesales, el 20 de enero dé 1998, Royal Insurance Co., presentó una moción solicitando se dictase sentencia sumaria a su favor. Adujo, que la acción instada había sido objeto de una transacción por sesenta y cinco mil ($65,000) dólares y solicitó el cumplimiento de los términos de la misma. Entre los hechos que alegó no estaban en controversia incluyó los que a continuación textualmente transcribimos, por considerarlos pertinentes:

“12. En 9/11/92, se ofreció a los demandantes por conducto de su abogado el Ledo. Emilio Cando Bello transigir sus reclamaciones por la cantidad global de sesenta y cinco mil dólares ($65,000), oferta que fue aceptada en diciembre de 1992, comprometiéndose el abogado de los demandantes a solicitar la autorización judicial correspondiente con relación a las reclamaciones de los menores hermanos de los niños fallecidos. Una vez se aprobara judicialmente la transacción en cuanto a estos menores, se procedería a hacer los pagos correspondientes. Para acreditar que lo anterior no está en controversia, véanse las páginas 19, 29, 35 y 37 de la deposición tomada a la Sra. Norma I. Hernández el día 10 de junio de 1997 y que se acompañan como Exhibit VI y la declaración jurada suscrita por el Ledo. Víctor M. Gómez Mercado que se acompaña como Exhibit VII.

13. Con fecha de 27 de febrero de 1993, los codemandantes José Aníbal De Jesús Torres y Evelyn Rodríguez De León, en representación de su hijo Luis Rivera Rodríguez, y William García Rodríguez y Patricia Rodríguez De León, en representación de sus hijas Yanira y Patricia García Rodríguez, radicaron ante el Tribunal Superior, Sala de Arecibo, bajo el número civil CEX-93-1805, una Petición de Autorización Judicial, debidamente juramentada por todos ellos, solicitando la aprobación de la transacción de estos niños 
*805
por la cantidad de cinco mil dólares ($5,000) para cada uno. Para acreditar que lo anterior no está en controversia, véase copia de los referidos documentos que se acompañan como Exhibits VIII y IX.

14. Encontrándose Royal Insurance Company en espera del resultado de la Petición de Autorización Judicial conforme acordado, lo próximo que ocurre es la radicación de la acción bajo el número civil CDP94-0107 el día 10 de mayo de 1994 y la posterior bajo el número civil CDP97-0285 radicada el día 26 de agosto de 1997por conducto de nuevos abogados de los demandantes. Véase declaración jurada suscrita por el Ledo. Víctor M. Gómez Mercado que se acompaña como Exhibit VII.

15. Según información recibida durante los procedimientos habidos en el caso de autos luego de radicada la demanda, para el día 12 de enero de 1994, se había señalado la vista sobre autorización judicial en el caso civil núm: CEX93-1805, la cual fue transferida a solicitud del licenciado Cancio-Bello. Posteriormente, con fecha de 14 de marzo de 1994, apenas dos meses antes de la radicación de la acción del epígrafe CDP94-0107, los demandantes desistieron sin perjuicio de la Petición de Autorización Judicial. Para acreditar que lo anterior no está en controversia, véanse copia de la minuta de 12 de enero de 1994 y copia de la Moción sobre Desistimiento sin Perjuicio que se acompañan como Exhibits X y XI.

21. Durante la vista celebrada el 6 de noviembre de 1997, y como es de conocimiento de este Honorable Tribunal y así surge de la minuta correspondiente, luego de que las partes discutieran extensamente la cuestión de si hubo o no una transacción, el abogado de los demandantes manifestó que no había controversia en que sí se llegó a una transacción. Por su parte, y por conducto de su abogado, la compareciente ofreció a la parte demandante el pago de intereses a contar desde el momento en que debió haberse perfeccionado la transacción. Esta oferta, conforme surge de los autos, fue rechazada por la parte demandante.

El 21 de abril de 1998, la parte demandante se opuso a la solicitud de sentencia sumaria, aunque surge de la sentencia apelada que sus alegaciones no fueron consideradas por el foro de instancia por haber sido presentadas luego de transcurrir el período adicional que le había concedido para ello.
Atendida la moción, el tribunal emitió su decisión el 18 de mayo de 1998, declarando con lugar la misma. Resolvió que la reclamación contra la co-demandada, Royal Insurance Co., había sido transigida por la cantidad global de sesenta y cinco mil ($65,000.00) dólares y que dicha transacción, por una suma menor al límite del máximo de la póliza, relevó al asegurado de toda responsabilidad. Dicho foro impuso a la aseguradora el pago de los intereses sobre la cantidad acordada, contados a partir del momento en que se perfeccionó la transacción entre las partes. Además, ordenó a las partes proceder a solicitar autorización judicial para adjudicar la correspondiente reclamación de los menores en el pleito transigido.
Inconforme, acude ante nos la parte demandante mediante recurso de apelación y plantea los siguientes errores:

“A. Erró el Honorable Tribunal al resolver sumariamente el caso de epígrafe cuando en el mismo existen graves controversias de hechos.

B. Erró el tribunal sentenciador al no considerar la Moción de Oposición a Sentencia Sumaria presentada por la parte demandante-apelante al igual que la posterior Moción de Reconsideración.

*806
C. Erró el tribunal sentenciador al reconocer la existencia y validez de la transacción del caso por los $65,000.’’

Luego de varios incidentes de naturaleza procesal, la parte apelada presentó su alegato el 26 de abril de 1999. Contando con el beneficio de la posición de ambas partes estamos en condiciones de resolver.
II
En nuestra jurisdicción se reconoce el principio de autonomía contractual entre las partes, quienes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, la moral y el orden público. Artículo 1207 del Código Civil. La existencia de un contrato depende de la concurrencia de los elementos de consentimiento, objeto y causa. Art. 1213 del Código Civil. Las obligaciones que nacen de los contratos tienen fuerza de ley entre los contratantes y deben cumplirse al tenor de los mismos. Artículo 1044 del Código Civil. Mercado Rivera v. Universidad Católica, _ D.P.R. _ (1997), 97 J.T.S. 106, opinión de 27 de junio de 1997. Perfeccionado un contrato mediando el consentimiento de las partes, éstas se obligan desde ese momento al cumplimiento de lo expresamente pactado, así como a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Artículo 1210 del Código Civil. 
La transacción es un contrato por el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado. Artículo 1709 del Código Civil, Ramos Rivera v. Estado Libre Asociado de Puerto Rico, _ D.P.R. _ (1999), 99 J.T.S. 63, opinión de 16 de abril de 1999; Neca Mortgage Corp. v. A & W Developers, _ D.P.R. _ (1995), 95 J.T.S. 10, opinión de 7 febrero de 1995.
Una transacción puede ser judicial o extrajudicial. Si antes de comenzar un pleito, las partes acuerdan eliminar la controversia mediante un acuerdo, estamos ante un contrato de transacción extrajudicial. También, cuando estando aún el pleito pendiente, las partes acuerdan una transacción sin la intervención del tribunal. Por otro lado, si la controversia degenera en un pleito y luego de éste haber comenzado, las partes acuerdan eliminarla y solicitan incorporar el acuerdo al proceso judicial en curso, estamos ante un contrato de transacción judicial que tiene el efecto de finalizar el pleito. Neca Mortgage Corp. v. A & W Developers, supra.
El contrato de transacción está regulado expresamente por el Código Civil y en lo que no sea incompatible con las normas que lo regulan, aplican las normas generales sobre la interpretación de contratos. Ramos Rivera v. Estado Libre Asociado de Puerto Rico, supra.
Nuestro Tribunal Supremo ha reconocido que al contrato de transacción le aplican los requisitos establecidos en el citado Artículo 1213 del Código Civil. Debe existir el consentimiento de los contratantes, ya que tiene que ser consensual; su objeto es la controversia entre las partes -la polémica judicial o extrajudicial-pues sin ella no puede existir la transacción; y su causa consiste en la eliminación de la controversia mediante recíprocas concesiones, pues si bien tiene el propósito de desaparecer un conflicto pendiente, se diferencia de otras figuras contractuales que tienen la misma finalidad, en que ello se logra mediante renuncias mutuas. Neca Mortgage Corp. v. A & W Developers, supra, citando a T. Ogáyar Ayllón, Comentarios al Código Civil y Compilaciones Forales, T. XX11, V. 2do., Edersa, Madrid, 1983, pág. 5.
La transacción, como todo contrato, no garantiza que los contratantes cumplan con sus respectivas prestaciones. Igaravidez López v. Ricci Asencio, _ D.P.R. _ (1998), 98 J.T.S. 143, opinión de 4 de noviembre de 1998. Ante ello, para hacer cumplir los acuerdos logrados en una transacción, la jurisprudencia *807 ha señalado que la judicial puede llevarse a efecto por los trámites de la ejecución de sentencias, mientras que la extrajudicial sólo puede hacerse cumplir cuando se haya declarado su eficacia en el juicio correspondiente. Neca Mortgage Corp. v. A & W Developers, supra.
En cuanto a la capacidad contractual de los menores, es importante señalar que los que no han sido emancipados no están capacitados para consentir. Como resultado de ello, los menores no pueden efectuar transacciones por sí solos. No obstante, el Código Civil provee un mecanismo para subsanar la incapacidad contractual de los menores en estos casos. El Artículo 1710 del Código Civil, en lo pertinente, dispone:

“El padre, o en su caso la madre, pueden transigir sobre los bienes y derechos del hijo que tuvieren bajo su potestad; pero si el valor del objeto sobre que recaiga la transacción excediera de quinientos ($500) dólares, no surtirá ésta efecto sin la aprobación judicial. ”

El alcance de la referida disposición, que contaba con su equivalente en el Código Español, fue interpretado por nuestro Tribunal Supremo en el caso de Cruz v. Central Pasto Viejo, Inc., 44 D.P.R. 367 (1933), cuya doctrina no ha variado al día de hoy. Entre otras cosas, en el referido caso se resolvió que, en ausencia de autorización judicial, la transacción no podrá surtir efecto por no haber adquirido vida legal. Véase además, Cáez v. U.S. Casualty Co., 80 D.P.R. 754 (1958).
Expresó el Tribunal Supremo en el citado caso de Cruz v. Central Pasto Viejo, que la aprobación judicial no es una función mecánica a la cual viene obligado el tribunal después de convenida una transacción por el padre. Indicó, además, que cuando el legislador dispuso que la transacción convenida por el padre no surtiría efecto sin la aprobación judicial, quiso significar algo y no realizar un acto inútil e innecesario, carente de fuerza legal, no debiendo esto ser ignorado por una decisión judicial.
En el mismo caso, el Tribunal Supremo estableció que la diferencia entre la enajenación y la transacción, cuando es necesaria la intervención judicial, estriba en que en la primera la autorización judicial es un requisito previo y en la segunda la aprobación o desaprobación puede recaer luego de aceptadas las bases del convenio. En la transacción, el padre está autorizado a prestar su consentimiento, pero sujeto a la condición de que sea aprobada por la corte. Son dos entidades las que intervienen en este consentimiento: la autoridad paternal y la autoridad judicial. Sin la aprobación de la última, falta el complemento necesario para que el consentimiento se manifieste en.toda su plenitud.
Puede decirse que ambas entidades se complementan, pero no se substituyen. El vínculo jurídico que crea las obligaciones y determina su exigibilidad no queda establecido por el mero consentimiento del padre, mientras no se haya obtenido la aprobación judicial.
Resolvió, además, que es claro que el padre puede convenir la transacción y que sus actos son válidos mientras actúe de acuerdo con las facultades que le concede el inciso segundo del Artículo 1710 del Código Civil; supra, pero si las partes contratantes, en vez de someter lo pactado al tribunal competente, prescindiendo de su intervención, dan por finalizado el contrato y actúan con carácter definitivo, entonces ese contrato, falto de vida jurídica, no surte efecto alguno, porque carece del requisito de la aprobación judicial.
Sobre la norma a seguir en lo que respecta a la limitación de quinientos ($500) dólares fijada en dicho Artículo 1710 del Código Civil, en aquellos casos donde el valor de lo reclamado depende de una acción, como ocurre ante una reclamación de daños y perjuicios, el Tribunal Supremo dispuso lo siguiente:

“Una corte de distrito puede, por ejemplo, autorizar una transacción por una cantidad menor de $500, 
*808
aunque el valor del objeto exceda de esa suma, teniendo en cuenta lo dudoso del derecho, las inconveniencias de un litigio, las concesiones mutuas inherentes a toda transacción, y otras circunstancias dignas de consideración; pero esto no quiere decir que el padre hubiese estado autorizado para transigir y prescindir de la autorización judicial en este caso por el hecho de que se fijara para la transacción una suma menor de $500. Nosotros entendemos que en un caso como este, en que el valor del objeto depende de la naturaleza, del caso, y en que no es empresa fácil determinar ese valor, la corte de distrito competente, y no el padre, es la autoridad llamada a intervenir en última instancia para aprobar o desaprobar la transacción iniciada por el padre, según lo aconsejen los intereses del menor. Natural es que en una acción de daños y perjuicios, surjan dudas acerca del valor del objeto o derecho de acción, y cuando existan estas dudas, por el interés del menor, en bien de la justicia, y de acuerdo con el espíritu de la ley, en vez de aplicarse la excepción, debemos regimos por la regla general que requiere la aprobación judicial para que surta efecto la transacción. ”

En el caso de autos, la parte demandante incluye menores de edad. Surge del expediente que no existe controversia sobre el hecho de que las partes acordaron una transacción global que sería dividida entre los codemandantes. Tampoco está en controversia que la solicitud de autorización judicial presentada por éstos fue desistida el 14 de marzo de 1994, antes de ser considerada por el foro de instancia. De hecho, la parte recurrida así lo expuso en su solicitud para que se dictara sentencia sumariamente, como hecho que no estaba en controversia. Conforme a la normativa antes expuesta, es forzoso concluir que como cuestión de derecho y contrario a lo resuelto por el foro recurrido, la transacción era inexistente porque al carecer del elemento del consentimiento nunca adquirió vida legal, es decir nunca fue completada. Sin la aprobación o autorización judicial, la transacción nunca surtió efecto.
Debemos destacar que aunque el Tribunal de Primera Instancia expresó en su sentencia haber reconocido la validez de la transacción por sesenta y cinco mil ($65,000) dólares, en la misma resolución también ordenó a las partes “solicitar autorización judicial para adjudicar la correspondiente reclamación de los menores en el pleito transigido”. Conforme a las circunstancias particulares del caso de autos, aceptar la teoría de la validación de la transacción, según expuesta por el Tribunal de Primera Instancia, resultaría en equiparar el requisito de aprobación judicial a una función mecánica a la cual vendría obligada una sala del tribunal después de haberla validado otra.
Por las razones que anteceden, erró el Tribunal de Primera Instancia al reconocer la validez de la transacción, en las circunstancias reseñadas, y declarar con lugar la sentencia sumaria. Ante ello, procede la revocación y es innecesario analizar el resto de los errores señalados.
III
Por los fundamentos expuestos, revocamos la sentencia recurrida.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2000 DTA 33
1. La póliza tenía una cubierta máxima de cien mil ($100,000) dólares por ocurrencia, lo cual exponía al pago de doscientos mil ($200,000) dólares como límite de responsabilidad, según los demandantes.
2. 31 L.P.R.A. see. 3372.
*809 3. 31 L.P.R.A. sec. 3391.
4. 31 L.P.R.A. sec. 2994.
5. 31 L.P.R.A. sec. 3375.
6. 31 L.P.R.A. sec. 4821.
7. 31 L.P.R.A. secs. 4821-30.
8. Los menores que no han sido emancipados, no están capacitados para consentir. Art. 1215 del Código Civil, 31 L.P.R.A. see. 3402.
9. 31 L.P.R.A. sec. 4822.
10. Para una comparación entre el articulado vigente en España y el nuestro, véase: Luis Rafael Rivera Rivera, El Contrato de Transacciónsus efectos en situaciones de solidaridad, Jurídica Editores, Puerto Rico, 1998.
11. El tribunal, en la pág. 7 de la sentencia recurrida, reconoce que el representante legal de los demandantes solicitó el desistimiento, sin perjuicio, de la autorización judicial. No obstante, concluye a base de su interpretación de un documento en el expediente del caso sobre autorización judicial, que la intención de las partes era otra.